UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND CERTAIN INSURANCE COMPANIES, *et al*, | § § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2105 |
| CAMERON INTERNATIONAL CORPORATION, *et al*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM

### I.   INTRODUCTION

Before the Court is third-party defendants', Hercules Drilling Company, LLC and Hercules Offshore, Inc., ("Hercules"), motion for summary judgment [DE# 249], the plaintiff's Walter Oil and Gas Corporation ("Walter"), response to Hercules' motion for summary judgment [DE# 288], and Hercules' reply to Walter's response [DE# 324].  The Court has reviewed the motion, response, reply, exhibits and arguments presented and determined that Hercules' motion raises question(s) of law that can be resolved on the parties' paper.  The Court grants Hercules' motion for summary judgment.

### II.   BACKGROUND FACTS

The plaintiffs, Underwriter at Lloyd's London and Center Insurance Companies ("Underwriters"), Walter Oil & Gas Corporation ("Walter"), Tana Exploration Company ("Tana") and Helis Oil & Gas Company, LLC ("Helis"), bring this suit against defendants Axon Pressure Product, Inc., Axon EP, Inc., ("Axon"), Cameron International Corporation

("Cameron") and CAD Control Systems, Inc., ("CAD") for losses associated with a well "blow-out" that occurred off the coast of Louisiana on July 23, 2013.

The undisputed facts reveal that Walter, the operator, was in the process of "recompleting the A-3 Well located in South Timbalier 200", pursuant to a 2011 Offshore Drilling Contract ("ODC") between Walter and Hercules, the contractor. The ODC called for the employment of the HERCULES 265 platform for the drill operation. In the event of damages or injuries, the ODC allocated the risk between Walter and Hercules. The July 23 blow-out caused Walter to incur substantial losses associated with damage to the rig and remediation of the well. After settlements with Walter, Tana and Helis, Underwriters was subrogated to "certain" of their claims allegedly suffered as a result of the 2013 blow-out. Underwriters sues Axon, Cameron and CAD under theories of strict liability.

### III.    CONTENTIONS OF THE PARTIES

In its motion for summary judgment, Hercules asserts that Walter breached the ODC between Hercules and Walter by failing to defend and indemnify Hercules against Axon's third-party suit against Hercules. Hercules also asserts that Walter's claims against Axon, if permitted, will render Walter's indemnity obligations to Hercules meaningless because a recovery by Walter against Axon simply triggers Hercules' indemnity obligations in favor of Axon, triggering Walter's indemnity obligations in favor of Hercules.

Walter does not dispute that Hercules is entitled to indemnity and a defense under the terms of the ODC between Walter and Hercules. Instead, Walter argues that between it has not sued Axon on claims that give rise to Walter's indemnity obligations to Hercules, *i.e.,* "pollution damages, underground damage, and damage to or loss of the hole" and the like, Walter's

indemnity obligations under the ODC are not triggered. This assertion is unavailing to Walter for the reasons stated herein.

## IV. STANDARD OF REVIEW

A summary judgment is generally appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Martinez v. Schlumber, Ltd.,* 338 F.3d 407, 411 (5th Cir. 2003).

When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux,* 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).

## V. DISCUSSION AND ANALYSIS

### A.

Hercules was responsible for the operation of the Drilling Unit, providing equipment and labor under the supervision of Walter. Hercules' motion for summary judgment is based on a 2011 ODC, the terms of which are unambiguous and, therefore, subject to interpretation by the Court. *See Becker v. Tidewater, Inc.,* 586 F.3d 358, 375 (5th Cir. 2009). Under the terms of

ODC, Walter is obligated to indemnify and/or hold harmless Hercules and its affiliates, including in some instances, Hercules' contractors and subcontractors. In turn, Hercules ". . . assume[d] only the obligations and liabilities" . . . associated with maintenance of the equipment. [DE# 249, ODC, p. 20].

The ODC states that all obligations not "specifically" assumed by Hercules become the sole responsibility of Walter. A relevant portion of the ODC provides in relevant part:

> . . . Operator [Walter] shall be solely responsible and assumes liability for all consequences of operations by both parties . . . all risks or liabilities incurred . . . directly . . . or indirect . . . notwithstanding any breach of representation or warranty, express or implied, either expressed or implied, . . . negligence or fault of [Hercules] its employees, subcontractors, consultants . . . .latent defects or unseaworthiness . . . including the Drilling Unit . . . on any theory of tort, breach of contract . . . strict liability . . . either latent or patent.

*Id*. at Article V. Article IX of the ODC is also in play. It addresses the issue of indemnity in the event of a blowout as follows:

    901.    Equipment or Property

(a)    . . .

(1)    Operator [Walter] shall be responsible for and hold harmless and indemnify Contractor for loss or destruction of or damage to Contractor's drill pipe, drill collars, subs, reamers, bumper subs, stabilizers and other in-hole equipment when such equipment is being used in the hole below the rotary table, normal wear expected . . . In the case of equipment lost, destroyed or damaged beyond repair, Operator shall reimburse Contractor an amount equal to the then current replacement cost of such equipment delivered to the Drilling Unit.

   . . .

(c)    Operator shall at all times be responsible for and hold harmless and indemnify Contractor from and against damage to or loss of Operator's property, Operator's items, and the property, equipment, material and services of Operator's Affiliated Companies, partnerships, and limited liability companies . . . and its contractors and subcontractors of any tier . . .

902. The Hole

In the event the hole should be lost or damaged at any time, Operator shall, except as provided in Paragraph 705(f), be responsible for and hold harmless and indemnify Contractor and its suppliers, contractors and subcontractors of any tier from such damage to or loss of the hole, including all downhole property therein. [Article 705(f), labeled "Standby Rate" establishes limitations on payment for drilling during a delay when the Contractor is the sole cause of the delay either due to negligence or willful conduct.]

911. Indemnity Obligation

(a) The parties intend and agree that the phrase "be responsible for and hold harmless and indemnify" or other similar words of release or indemnity (including limitation or exclusion of damages and all other exculpatory provisions) in this Contract including without limitation . . . means that the indemnifying party shall release, indemnify, hold harmless and defend (including payment of reasonable attorney's fees and costs of litigation) the indemnified party from and against any and all claims, demands, causes of action, losses, liabilities, damages, judgments and awards of any kind or character . . .

(b) An indemnifying party's obligations contained in this Contract shall extend to the indemnified party and shall inure to the benefit of such party, . . .and to actions against the Drilling Unit . . .

**B.**

Walter is obligated, by the terms of the ODC to defend, indemnify and hold harmless Hercules from claims made by Axon unless Hercules' acted "willful" and thereby caused the blow-out. There is absolutely no evidence that Hercules acted willfully and thereby forfeited the indemnity provisions of the ODC and no such act(s) are claimed by Walter.

Underwriters sued Axon only under strict liability theories associated with failed BOP controls pursuant to Louisiana Product Liability Act, LA. Rev. Stat. Ann. § 9:2800.52 *et. seq*. Nevertheless, Walter maintains that it is entitlted to also recover from Axon based on incurred

costs "in excess of costs paid . . ." or reimbursed by Underwriters. In its response to Hercules' motion, Walter argues that because its claims against Axon do not implicate the ODC between Walter and Hercules, and because Axon, in particular, is not covered by the ODC, it is not obligated to provide a defense or indemnify Hercules against Axon. The Court disagrees. Axon's suit against Hercules is triggered by Underwriters' suit against Axon. In turn, Axon's suit against Hercules is based on contractual obligations between Hercules and Axon contained in an indemnity agreement.

On June 18, 2010, Hercules and Axon entered into a Master Service Agreement ("MSA") whereby Hercules agreed to indemnify Axon . . . from and against any claims for loss, damage . . . caused by the negligence or other legal fault of the [Hercules]. The MSA provides in relevant parts:

> **Company shall release, Defend, indemnify, and hold harmless Contractor Group from and against any and all Losses arising out of personal or bodily injury, sickness, disease or death or property damage, destruction or loss suffered by any member of the Company Group in connection with this Agreement.**

"Company Group" is defined in Paragraph 8.1(a) as:

> **individually or in any combination: (i) Company, its parent, subsidiaries and Affiliates (as defined in Article 23), contractors (other than Contractor), (ii) and their partners, joint venturers, any entities for whom Company is performing services or providing goods and all of their respective parents, subsidiaries and affiliates, and (iii) the respective directors, officers, agents, representatives, employees and invitees of all of the foregoing.**

"Contractor Group" is defined in Paragraph 8.1(b) as:

> **individually or in any combination: (i) Contractor, its parent, subsidiaries and Affiliates (as defined in Article 23) and subcontractors, (ii) its and their partners, joint venturers and all of their respective parents, subsidiaries and affiliates, and**

> **(iii) the respective directors, officers, agents, representatives, employees and invitees of all the foregoing**

*See* [MSA, DE# 256, Ex. A at ¶ 8.1(a), 8.1(b) and 8.3].

**C.**

Walter also asserts that because this is a maritime suit, "a contract of indemnity should be strictly construed" as not imposing liabilities not expressly stated in the ODC. For this principle, Walter cites to *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 333 (5th Cir. 1981) and *N. Assurance Co. of America v. BHP Billiton Petroleum Deepwater, Inc.,* 722 F.3d 300, 303 (5th Cir. 2013). These cases are inapplicable and Walter's reliance is misplaced because Walter seeks to recover from Axon losses that it cannot recover from Hercules. *See also* Articles V § 501 and IX, §§ 901, 902 and 911. And, since Axon can recover indemnity against Hercules for . . . all losses arising out of . . . property damage . . . for equipment supplied by Axon pursuant to the MSA, any recovery by the plaintiffs against Axon results in an Axon recovery against Hercules.

**D.**

Moreover, Walter's pleadings and the Court's interpretation of the ODC, are not the only bases for the Court's conclusion that Hercules' motion for summary judgment should be granted. The testimony of the Vice President of Walter, Jim Looke, who executed the ODC is an admission that Walter owes a duty to defend and, tellingly, has failed to provide it. He testified as follows:

> **Q. All right. Did you review the indemnity obligations?**
> A. I can't recall, but, you know, I signed it, I guess I reviewed it.
>
> **Q. And that's something you would have normally done. So you don't specifically remember reviewing the indemnity obligations in this contract, but something you normally do, so you assume you did in this case?**

A. Right.

**Q. If you turn to Section 901 of this drilling contract, it -- it's the indemnity obligations that Walter undertook in this drilling contract.**

…

**Q. Are these -- is this a standard indemnity section that Walter normally agrees to?**
A. I'll have to read it, read over it first. This looks -- looks standard, yes.

**Q. So if you look at, specifically, Section 901, at "Equipment and Property," in that, the section that relates from operator to contractor, what it says is that the operator in this case would be Walter Oil & Gas, correct?**
A. Right.

**Q. And the contractor would be Hercules, correct?**
A. Right.

**Q. That if it's Walter's equipment and property, that, basically, Walter assumes the risk for that loss to that equipment if something goes wrong, correct?**
A. Right.

….

**Q. And that it would also hold Hercules harmless and defend it, should someone -- someone assert a claim regarding Walter's equipment and property, correct?**
A. Yes.

**Q. If you look at Section 902, it refers to the hole. That section, again, also says that should there be damage to the hole, that Walter assumes the -- the risk for that damage, correct?**
A. Correct.

**Q. Should someone assert a claim to Hercules for damage to the hole, that Walter agrees to indemnify and defend Hercules for that claim, correct?**
A. Correct.

**Q. If you look at 906 for debris removal, same thing, operator assumes the risk for the debris removal for their own property, correct?**
A. Correct.

> **Q. And that should someone assert a claim against Hercules for that amount of debris removal, that Walter agrees to indemnify and defend Hercules for those amounts, correct?**
> A. Correct.
>
> **Q. On Section 907 for underground damage, once again, there risk -- the risk assumed by Walter in the contract is that Walter would assume the risk for any underground damage to their property, correct?**
> A. Correct.
>
> **Q. And should someone assert a claim against Hercules for any damage -- or underground damage, that Walter will indemnify and defend Hercules for such a claim, correct?**
> A. Correct.
>
> **Q. And then Section 1004, if you could turn to that. That's in a section for additional insured, correct?**
> A. Yes.
>
> **Q. And in that section Walter Oil & Gas verifies or at least agrees that it -- it's going to name Hercules, the contractor, as an additional insured to its insurance policies, correct?**
> A. Correct.

*See* [Doc. No. 249, Exh. B, Deposition pp. 163-168].

### E.

In addition to its duty to defend Hercules, Walter owes Hercules an attorneys' fee for breach of contract. Walter has intentionally failed to provide a defense to Hercules resulting in a breach of the ODC. Under maritime law "[a] contract of indemnity includes the obligation to pay the costs and attorneys' fee of the indemnitee against the third party . . . " *See Nathaniel Shipping, Inc., v. General Elec. Co., v. La. Gulf Shipyards, Inc.,* 920 F.2d 1256, 1268 (5th Cir. 1991); *see also* [ODC, Art. IX, § 911(a); Exh. A, Doc. No. 249]. Therefore, Hercules is permitted to recover a reasonable attorneys' fee incurred in pursuing a recovery under the terms

of the ODC. *See Jones v. Francis Drilling Fluids, Ltd.,* 642 F.Supp. 2d 643, 673 (S.D. Tex. 2009).

**F.**

Finally, Hercules' right to a defense does not depend upon whether Axon recovers against Hercules. The duty to defend is owed regardless of the nature of Axon's suit against Hercules because the suits arise out of the same nucleus of facts and occurrence. Therefore, Hercules' motion for summary judgment is GRANTED.

It is so Ordered.

SIGNED on this 4th day of January, 2018.

_____
Kenneth M. Hoyt
United States District Judge