UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CERTAIN UNDERWRITERS AT LLOYD'S §
LONDON AND CERTAIN INSURANCE §
COMPANIES, *et al*, §
　§
　Plaintiffs, §
VS. § CIVIL ACTION NO. 4:14-CV-2105
　§
CAMERON INTERNATIONAL §
CORPORATION, *et al*, §
　§
　Defendants. §

## MEMORANDUM AND ORDER

**I.  INTRODUCTION**

Before the Court are Axon's motion for summary judgment [DE# 256] asserting that Hercules owes Axon a duty to defend and indemnify Axon for claims made by the plaintiffs[1] in this suit, Hercules' response [DE# 277] and Axon's reply [DE# 329]. The Court has examined the motion, response, reply and related documents and, incorporating by reference the Court's earlier Memorandum [DE# 413], determines that Axon's motion for summary judgment should be granted.

**II.  FACTUAL BACKGROUND**

The factual background giving rise to Axon's claims against Hercules originates in the business relationship between Axon and Seahawk Drilling, Inc., ("Seahawk") and the Master Service Agreement ("MSA")[2] executed on June 16, 2010. Axon contracted to provide materials,

---

[1] Underwriters at Lloyds, subrogated to certain claims of their insureds, Walter, Tana and Helis, and together they seek to recover losses against Axon, Cameron and CAD. Throughout, they will be referred to as "plaintiffs". *See* [DE# 413].

[2] At all times, reference to the MSA is a reference to the agreement that Axon and Seahawk executed on June 16, 2010, and was assumed by Hercules under the terms of the Asset Purchase Agreement between Seahawk and Hercules.

goods, equipment and services in connection with Seahawk's business of drilling oil and gas wells. Specifically, Axon refurbished the Hercules 265 blowout preventer ("BOP") at issue in this case. Prior to executing the MSA, Seahawk filed for bankruptcy. Executing an MSA with Axon was essential to the consummation of Seahawk's sale of its assets to Hercules. *In Re Seahawk Drilling, Inc., et. al*; Cause No. 11-20089 [DE# 489]. The June 16, MSA, in sweeping language, formalized all prior and ongoing contractual obligations between Axon and Seahawk with the following language:

> Upon execution of this agreement, [Seahawk] agrees that . . . this Agreement shall remain in force and effect until canceled by either party by giving the other party ten (10) days prior written notice . . . [T]his agreement shall control and govern all work performed by [Axon] . . . [and any] agreements or stipulations not in conformity with the terms and provisions hereof shall be null and void . . .

*See* [DE# 256, Exh. A].

On June 18, 2010, Axon executed a Master Service Contract ("MSC") with Hercules after Hercules purchased the assets of Seahawk out of a bankruptcy, pursuant to an Asset Purchase Agreement ("APA"). The purchase included ownership and assumption of the MSA between Axon and Seahawk. *See* [DE# 256, Exh. B]. At the time of the July 23, 2013 blowout, the MSA had not been terminated according to its terms.

The BOP and the blind shear arms, the subject of the plaintiffs' suit against Axon and others, were refurbished by Axon after the MSC was executed. From time-to-time, prior to the execution of the APA between Hercules and Seahawk, Axon performed similar and related work for Seahawk. When the blowout occurred, Hercules was under contract with Walter, pursuant to a 2011 Offshore Drilling contract, to recomplete the A-3 Well in the Gulf of Mexico.

### III. HERCULES' CONTENTIONS

In several opposing contentions to Axon's motion for summary judgment, Hercules asserts that: (a) the June 16, 2010, MSA between Axon and Seahawk was superseded by the MSC executed by Hercules and Axon on June 18, 2010; (b) the MSC calls for the parties to defend and indemnify each other except where the cause of loss was the negligence or legal fault of the other party; (c) the MSC provides that "it shall not be amended, modified, or waived except in writing signed by the parties"; (d) the equipment and services, the subject of this suit, were supplied "after" June 18, 2010 and are; therefore, subject only to the MSC; and (e) a material fact issue exists concerning which of the agreements, the MSA or MSC, governs the contentions between Hercules and Axon.

### IV. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."* *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant

is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 242, 255 (1986).

## V. DISCUSSION AND ANALYSIS

The Court is of the opinion that the claims between Hercules and Axon arise out of a maritime contract; therefore the rules of contract construction will govern the interpretation of the MSA and the MSC. *Amica Mut. Ins. Co. v. Moak,* 55 F.3d 1093, 1095 (5th Cir. 1995) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). Disagreement between the parties concerning the meaning of contract terms does not transform issues of law to issues of fact. *D.E.W., Inc. v. Local 93, Laborer's Int'l Union of N. Am.,* 957 F.2d 196, 199 (5th Cir. 1992) (citation omitted). Moreover, general maritime law applies to contracts particularly where the duties assigned "enable[d] the vessel to perform the function for which it was designed . . ." *Gilbert v. Offshore Prod. & Salvage, Inc.,* 95-122, 1997 WL 149959 (E.D. La. Mar. 21, 1997) aff'd 134 F.3d 368 (5th Cir. 1997). Therefore, whether a particular agreement constitutes a maritime contract depends on the "nature and character of the contract". *Johnson v. PPI Technology Services, L.P.,* 3 F. Supp. 3d 553, 557 (E.D. La. 2014).

Hercules contends that the June 16, 2010, MSA between Axon and Seahawk that Hercules assumed, was superseded on June 18, 2010, by the execution of a MSC between Hercules and Axon. This contention is without merit. The Axon-Seahawk MSA provides that it may be terminated by either party upon written notice. It is undisputed that neither Axon nor Hercules gave the other party the requisite notice called for in the MSA to terminate it. *See* Restatement of (Second) Contracts § 280(a) 1981; *see also FDIC Waggoner,* 999 F.2d 826, 829 (5th Cir. 1993). In order to establish that the MSC replaced, superseded or amended the MSA,

Hercules must establish: (a) the existence of a previous valid obligation; (b) that a new contract was executed; (c) that the old contract was extinguished; and, (d) that the new contract is valid.

The MSC between Hercules and Axon does not "specifically" extinguish the MSA. While it states that the MSC "shall supersede, amend and restate any prior service or supply agreement", it fails to recognize that the MSA is not a "prior service or supply agreement", as a matter of law. Therefore, the old contract, the MSA, was not terminated. The MSA and the MSC are separate and distinct contracts addressing different functions. The MSA between Axon and Seahawk is a maritime contract, the MSC is not. In reaching this conclusion, the Court looked to the "nature and character" of the two contracts. *See Gilbert,* 134 F.3d 368; *see also Davis & Sons, Inc., v. Gulf Oil Corp.,* 919 F.2d 313, 316 (5th Cir. 1990). The contractual relationship between Seahawk and Axon related to oil and gas exploration, requiring Axon to supply manufactured parts and materials essential to recompletion of the A-3 well. *Id.; see also Johnson,* 3 F.Supp. 3d at 557-58. The MSC is simply a "service or supply or access agreement" between Hercules and Axon. It did not exist prior to June 18, 2010. Therefore, the Court concludes that the MSA, because it is not a service or supply or access agreement was not terminated, amended or superseded. *See Wagner,* 999 F.2d at 829.

Finally, Hercules suggests that the Court should await the outcome of the plaintiffs' suit against Axon. This contention overlooks the fact that the Axon-Seahawk MSA is a maritime contract and, generally, is enforceable even when a party is found to be negligent if the indemnity provision is clear and unambiguous. *See Johnson,* 3 F.Supp. 3d at 559; *see also Becker v. Tidewater, Inc.,* 586 F.3d 358, 369 (5th Cir. 2009)(interpretation of a contractual indemnity provision is a question of law).

## VI. CONCLUSION

The indemnity section of the MSA is clear and unambiguous providing that Hercules shall ". . . defend [Axon] at its sole expense . . . and . . . shall pay "all" losses arising out of ". . . claims, demands, causes of action . . . of any kind and character . . ." *See* [DE# 256, Exh. A at Section 8.1 (d)]. Hence, the outcome of the plaintiffs' case against Axon is not determinative of the contractual obligations that flow between Hercules and Axon under the MSA. Therefore, the Court HOLDS that Axon's motion for summary judgment is meritorious and should be Granted.

It is so Ordered.

SIGNED on this 10th day of January, 2018.

_____
Kenneth M. Hoyt
United States District Judge